933 P.2d 571

**STATE of Arizona, Appellee,**

v.

**Robert Victor BANICKI, Appellant.**

**No. 1 CA–CR 96–0542.**

Court of Appeals of Arizona,
Division 1, Department E.

March 4, 1997.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Jim Nielsen, Assistant Attorney General, Phoenix, for Appellee.

Lisa Parsons, Yuma, for Appellant.

## OPINION

VOSS, Judge.

Robert Banicki (defendant) appeals from his convictions and sentences on one count of aggravated driving under the influence of intoxicating liquor and one count of driving under the influence of intoxicating liquor with one prior conviction. We affirm.

### FACTUAL [1] AND PROCEDURAL BACKGROUND

Prior to his arrest, defendant's Arizona driver's license had been canceled because of an undisclosed, prior revocation of his Tennessee driver's license. In addition to the cancellation, defendant's Arizona driving privileges had been suspended on three separate prior occasions, the most recent being in September 1992. A law enforcement officer personally served defendant with notice of one suspension, at which time defendant signed a form acknowledging that his Arizona driving privileges could be reinstated by paying a civil sanction and providing proof of financial responsibility.[2] The Motor Vehicle Division (MVD) mailed notices of the other two suspensions and the cancellation to defendant's last known address. Defendant did not attempt to reinstate his driving privileges.

On December 13, 1995, Officer Neal Hamilton stopped defendant's vehicle after observing the vehicle speeding, making rapid lane changes without signaling, and jerking back and forth on the roadway. Defendant

---

1. We view the facts in the light most favorable to sustaining the verdicts, resolving all reasonable inferences against defendant. *State v. Atwood,* 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992), *cert. denied,* 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

2. At trial, the state admitted defendant's driving record into evidence, which included a notice defendant received, requiring him to apply to have his driving privilege reinstated after the period of suspension.

exited his vehicle, approached Officer Hamilton and presented his Georgia driver's license.[3] Officer Hamilton observed that defendant smelled of alcohol, slurred his speech, was unsteady on his feet, and had bloodshot and watery eyes. Officer Hamilton then conducted six field sobriety tests. After defendant failed all six tests, Officer Hamilton arrested defendant and transported him to the Yuma County Sheriff's Office, where defendant refused to submit to any tests to determine blood alcohol concentration.

On December 21, 1995, the Yuma County Grand Jury indicted defendant on one count of aggravated driving under the influence of intoxicating liquor (count one) and one count of driving under the influence of intoxicating liquor with one prior conviction (count two).

At the conclusion of the testimony, the court reviewed the proposed jury instructions with counsel. Because neither party objected to the proposed instructions, they were given as originally proposed.

The jury returned guilty verdicts on both counts. The trial court sentenced defendant to concurrent terms of six months imprisonment on count one and 60 days in jail on count two. The trial court also placed defendant on 36 months supervised probation and ordered him to pay a fine of $795.00. Defendant timely appeals from his convictions and sentences.

## DISCUSSION

The sole issue on appeal is whether the record established that defendant no longer had the privilege to drive in Arizona at the time of his arrest. Defendant contends that the period of suspension on his Arizona driver's license had run and the possession of his Georgia driver's license upon arrest was a clear exercise of his nonresident driving privilege. Because defendant failed to raise this

issue in the trial court, we review only for fundamental error. *State v. Gendron*, 168 Ariz. 153, 812 P.2d 626 (1991).

### A. Driving Privilege

Generally, a nonresident who possesses a valid driver's license from his home state has the privilege to drive on Arizona roadways and is exempt from Arizona licensing provisions. Ariz.Rev.Stat. Ann. section (A.R.S. § 28–412(A)(3)). However, A.R.S. § 28–450 provides that a nonresident who has had his Arizona driver's license or privilege suspended may not operate a vehicle in this state under a license from another jurisdiction for the period of the suspension.

■ The pivotal question then turns on the definition of "suspension." In most cases, the MVD shall not suspend or revoke a driver's license or privilege to drive for more than one year. A.R.S. § 28–448(A). A.R.S. § 28–402(17) provides:

> "Suspension" means that the driver's license and privilege to drive a motor vehicle on the public highways are temporarily withdrawn but only *during the period of the suspension and until application for reinstatement is made.*

(Emphasis added.) We find this statutory definition dispositive of the question before us. It is clear that the MVD can only suspend the driving privilege for one year, and does not have the power to continue the sanction beyond that period. However, the driving privilege is not automatically reinstated. Rather, the privilege to drive is restored only after the driver applies for reinstatement. *See State v. Wilkinson*, 163 Ariz. 298, 787 P.2d 1094 (App.1989); *see also State v. Scott*, 129 Ariz. 588, 633 P.2d 397 (1981) (revocation remains in effect until former license holder acts to have the license renewed or restored).[4]

3. Although the record does not reveal the exact date defendant obtained this Georgia driver's license, it is uncontested that the Georgia license was procured after the cancellation of the Arizona license and after at least one suspension of the Arizona driving privilege.

4. Erroneously relying on *State v. Johnston*, 152 Ariz. 273, 731 P.2d 638 (App.1987), defendant

asserts that a license subsequently obtained from another jurisdiction permits an individual to drive in Arizona. Unlike the case at bar, in *Johnston*, the license presented upon arrest came from a state that was a signatory to the Driver's License Compact; and Arizona never suspended Johnston's driving privilege. Here, Georgia is not a signatory to the Compact and Arizona

■ In this case, defendant's privilege to drive in Arizona was most recently suspended in September 1992. Subsequently, defendant moved to Georgia and obtained a Georgia driver's license.[5] Upon defendant's arrest in December 1993, over one year had elapsed since his most recent suspension. However, defendant did not attempt to cure the causes for his three suspensions in Arizona, failing to appear in court, failing to attend a mandatory driver's education course, and failing to pay a civil fine. Further, defendant never attempted to apply for reinstatement, as required by statute and MVD regulations. Accordingly, we hold that defendant's privilege to drive in Arizona had not been restored at the time of his December 1993 arrest.

### B. Jury Instruction

■ Defendant maintains that the trial court committed error in instructing the jury that defendant must be found guilty if, among other things, the jury determined that defendant's Arizona driver's license or privilege to drive was suspended or canceled. Failure to object to an instruction waives the issue on appeal in the absence of fundamental error. Rule 21.3(c), Arizona Rules of Criminal Procedure; *Gendron,* 168 Ariz. at 154, 812 P.2d at 627. "Fundamental error is 'error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial.'" *State v. Bible,* 175 Ariz. 549, 572, 858 P.2d 1152, 1175 (1993) (quoting *State v. Hunter,* 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984)), *cert. denied,* 511 U.S. 1046, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1993).

Upon the close of evidence, the judge instructed the jury:

> The crime of aggravated driving under the influence of intoxicating liquor requires proof of the following three things: number 1, the defendant committed the offense of driving under the influence of intoxicat-

ing liquor; and, 2, at the time of driving, the defendant's Arizona driver's license or privilege to drive was suspended or cancelled; and, number 3, the defendant knew or should have known of the suspension or cancellation.

Defendant contends that the judge's instruction renders his possession of a Georgia driver's license meaningless, constituting fundamental error. We disagree.

■ The jury heard testimony concerning three different driver's licenses that defendant possessed at different times from three different jurisdictions. The judge instructed on the only relevant inquiry for the jury: Whether defendant's privilege to drive in Arizona was in effect at the time of the arrest. The validity of defendant's Georgia driver's license would have been meaningful if the jury would have determined that defendant had the privilege to drive in Arizona. Accordingly, it was not the judge's instruction that extracted meaning from defendant's Georgia driver's license; rather, it was the jury's finding that defendant's privilege to drive in Arizona was under suspension.[6]

We find that the trial court's instruction was supported by the evidence and the law.

### C. Request for Fundamental Error Review of Entire Record

Finally, defendant's counsel requests this court to search the entire record for other fundamental error pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

■ In *Anders,* the Supreme Court held that we have an obligation to review a criminal case for fundamental error when counsel is unable to advance meritorious issues. *Id.* Further, as this court's obligation to conduct a fundamental error review was based on A.R.S. § 13–4035, now repealed, we no longer are obliged to conduct fundamental error reviews in non-*Anders* cases. *State v. Tay-*

suspended defendant's privilege on three separate occasions.

5. For our purposes, we assume that Georgia was defendant's home state at the time of arrest.

6. *See* section A, *supra.*

*lor,* 187 Ariz. 567, 571–72, 931 P.2d 1077, 1081–82 (1996); *see State v. Smith,* 184 Ariz. 456, 459–60, 910 P.2d 1, 4–5 (1996).

█ Because counsel asserted and fully briefed one issue for our consideration, defendant's brief fails to comply with *Anders.* Further, because we are no longer obliged to search the record for fundamental error in non-*Anders* cases, we decline defendant's request. *See State v. Scott,* 187 Ariz. 474, 930 P.2d 551 (1996).

### CONCLUSION

We conclude that defendant's Arizona driver's license and nonresident privilege to drive were still under suspension at the time of his arrest. Further, we conclude that the judge's jury instruction was appropriate. Accordingly, we affirm the convictions and sentences imposed by the trial court.

WEISBERG, P.J., and KLEINSCHMIDT, J., concur.